IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

MATHEW INSKEEP, individually and acting for, by, or on behalf of BACCUS GLOBAL, LLC,

    *Plaintiff*,

v.

FOLEY & LARDNER, LLP, a foreign limited liability partnership, and NELSON MULLINS RILEY & SCARBOROUGH, LLP a/k/a NELSON MULLINS BROAD & CASSEL, LLP, a foreign limited liability partnership,

    *Defendants*.

_____/

CASE NO.:

## **COMPLAINT**

Plaintiff, MATHEW INSKEEP, individually and acting for, by, or on behalf of BACCUS GLOBAL, LLC, by and through undersigned counsel, hereby sues FOLEY & LARDNER, LLP, a foreign limited liability partnership, and NELSON MULLINS RILEY & SCARBOROUGH, LLP a/k/a NELSON MULLINS BROAD & CASSEL, LLP, a foreign limited liability partnership, and in support thereof alleges the following:

### **JURISDICTION, VENUE AND PARTIES**

1. This is a Complaint for declaratory relief pursuant to 28 U.S.C. § 2201. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as arising under federal law and 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees and is between parties of different states.

2. Plaintiff, MATHEW INSKEEP ("Inskeep"), is an individual, a resident of Palm Beach County, Florida, and is otherwise *sui juris*. Mr. Inskeep is a member of Baccus Global, LLC

("BG") with the authority to act for, by, or on behalf of BG pursuant to, *inter alia*, Sections 3.1.1 and 3.6 of all known BG operating agreements[1].

3. Defendant, FOLEY & LARDNER, LLP ("Foley"), is a Wisconsin limited liability partnership authorized to and conducting business in Florida, including in Palm Beach County and Broward County.

4. Defendant, NELSON MULLINS RILEY & SCARBOROUGH, LLP a/k/a NELSON MULLINS BROAD & CASSEL, LLP ("Nelson Mullins"), is a Georgia limited liability partnership authorized to and conducting business in Florida, including in Palm Beach County and Broward County.

## FACTUAL ALLEGATIONS

5. Baccus Global ("BG") is a Florida limited liability company, which was founded in 2008 by Inskeep for the purpose of marketing and selling consumer products.

6. After its initial formation, Ling To Shum ("Shum"), Ryan Powers ("Powers"), and Mark Milocco ("Milocco") became involved in Baccus Global; Shum with respect to Baccus Global's manufacturing relationships overseas and Powers and Milocco as employees.

7. On September 11, 2009, Inskeep, Jennifer Inskeep, Shum, Powers, and Milocco executed an operating agreement, attached hereto as **Exhibit "A"** (the "2009 Operating Agreement").

8. In 2010, another operating agreement was prepared (the "2010 Operating Agreement"). There are various versions of the 2010 Operating Agreement, however, and BG has

---

[1] As set forth herein, there are 2009 and 2010 iterations of the BG operating agreement and various versions thereof. Disputes exist as to which document, if any, is valid.

represented that the operating agreement attached hereto as **Exhibit "B"** is the valid BG operating agreement.

9. Pursuant to both the 2009 Operating Agreement and the 2010 Operating Agreement, Inskeep is granted the authority to bring this action acting for, by, or on behalf of BG. *See* **Exhibit A** at Sections 3.1.1 and 3.6; **Exhibit B** at Sections 3.1.1 and 3.6.

10. In February 2020, at minimum, Shum, Powers, and Milocco, *inter alia*, purported to oust Inskeep from the company and have attempted to prevent him from BG's operations to the greatest extent possible.

11. Since February 2020, Shum, Powers, and Milocco have pretended to take actions—including suing and defending lawsuits—as "Baccus Global" as a way to benefit themselves and their individual interests.[2]

12. Since the purported ouster, Inskeep has been in contentious litigation with, *inter alia,* Shum, Powers, and Milocco (the "Company Litigation").

13. Based on the extent to which the Company Litigation has been litigated, the legal fees for all involved are and have been extensive.

14. Shum, Powers, and Milocco state they have each retained Foley to represent them in the various ongoing proceedings with Inskeep.

15. Shum, Powers, and Milocco then arranged for Nelson Mullins to represent: (1) BG, (2) Inskeep's former counsel and BG's former general counsel Jhan Lennon, Esq., and (3) other BG current and former employees.

---

[2] Shum, Powers, and Milocco have claimed to be the "real" Baccus Global. This action is brought by Inskeep both in his individual capacity and while acting for, by, or on behalf of BG pursuant to Sections 3.1.1 and 3.6 of the 2009 and/or the 2010 Operating Agreement(s) and Inskeep represents BG's interests herein pursuant to the authority granted him in those agreements and as contemplated by those agreements.

16. All of the foregoing's attorneys' fees have been paid by BG.

17. This is improper as it is directly contrary to the terms of any known version of any operating agreement.[3]

18. The 2009 operating agreement provides as follows:

> 3.6 <u>Special Managing Member Responsibilities</u>. Notwithstanding anything to the contrary contained in this Agreement:
> 3.6.1 No Managing Member or Member, other than Mathew Inskeep, shall contract debt or incur a liability by or on behalf the Company of more than $20,000 without the prior unanimous written consent of all of the Members[.]

19. In identical terms, the 2010 operating agreement provides as follows:

> 3.6 <u>Special Managing Member Responsibilities</u>. Notwithstanding anything to the contrary contained in this Agreement:
> 3.6.1 No Managing Member or Member, other than Mathew Inskeep, shall contract debt or incur a liability by or on behalf the Company of more than $20,000 without the prior unanimous written consent of all of the Members[.]

20. Accordingly, regardless of which—if any—operating agreement is operative, one thing is certain: For BG to contract debt or incur a liability of greater than $20,000.00, (1) Inskeep must be the party contracting and/or incurring the liability or (2) all members—including Inskeep—must provide written consent as members.

21. Inskeep never consented to BG paying for Foley's and Nelson Mullins' attorneys' fees nor did he contract for such a debt or agree to such a liability on behalf of BG.

22. In turn, it is impossible for BG to have paid such attorneys' fees while simultaneously complying with the operating agreements' requirements.

23. Nevertheless, BG paid for such fees.

---

[3] To the extent that Inskeep is the sole member of BG, he did not in any way agree, consent, or otherwise approve of BG paying for the foregoing attorneys' fees.

24. Both Shum—who has represented that he is the sole managing member of BG—and Lennon have clarified that BG is paying for its own representation and for Foley's and Nelson Mullins' fees regarding Shum, Powers, Milocco, and Lennon.

25. The problem with the above is, under both the 2009 and 2010 operating agreements, Inskeep is the only managing member with regard to day-to-day operations and <u>he remains</u> as the managing member unless he resigns, becomes disabled, or dies. *See* **Exhibit A** at Sections 3.1.1 ("3.1.1. [] The Members agree that the following persons shall be and shall remain the Managing Member of the Company during the entire term of this Agreement, unless as provided in Sections 3.1.2. and 3.13 [*sic*] of this Agreement: Mathew Inskeep and Ling To Shum are the Managing Members."), 3.1.2 (providing procedure for replacement of managing member in event of resignation, disability, or death), and 3.1.3 (providing procedure for resolving deadlocked issues); **Exhibit B** at Sections 3.1.1 (same), 3.1.2 (same), and 3.1.3 (same).

26. Moreover, Shum clarified that, as of March 2021, BG has paid more than $100,000.00 in legal fees.

27. Quite obviously, however, the amount of money that BG has paid in legal fees *far* exceeds $100,000.00 and is likely over a million dollars.

28. In any event, however, $100,000.00 is more than $20,000.00.

29. Therefore, Inskeep's consent along with any other member or Inskeep's action alone is necessary to render such payments in compliance with BG's operating agreement.

30. Importantly, Foley and Nelson Mullins have been at all times material *well aware* of the existence of the operating agreements and the terms thereof as they have communicated, litigated, and interpreted their meaning since at least February 2020.

31. As law firms paid by BG and subject to disgorgement should Inskeep's interpretation of the operating agreements and/or facts be correct and enforced, Foley and Nelson Mullins are antagonistically interested in the correct interpretation of the BG operating agreements' terms.

32. The law firms were at all material times in possession of BG operating agreements and aware of their terms.

33. All parties herein knew of the terms of Section 3.6.1, which has remained unaltered since 2009.

## COUNT I
## DECLARATORY RELIEF
*28 U.S.C. § 2201*
**(Against Foley & Lardner, LLP)**

34. The allegations of Paragraphs 1 – 33 are re-alleged and incorporated herein.

35. This is an action pursuant to 28 U.S.C. § 2201 for declaratory relief.

36. There is an actual, concrete, particularized, and continuing controversy that exists between Inskeep and Foley regarding the propriety of any and all payments made to or agreements to make payments with Foley, related to which Inskeep has a legally protected and protectable interest as a member of BG and pursuant to the 2009 Operating Agreement and/or the 2010 Operating Agreement (as defined herein).

37. Without a declaration from this Court to the contrary, BG will continue to pay the legal fees for Foley and Foley will thereby violate Inskeep's rights under the 2009 Operating Agreement and/or the 2010 Operating Agreement (as defined herein) and deplete BG's funds and Inskeep's rightful share therein.

38. Considering the actual and continuing controversy, declaratory relief would serve a useful purpose in clarifying and settling the parties' adverse interests and issues regarding

whether Foley could previously, can today, and can in the future obtain payments from BG in excess of $20,000.00 or contract for such fees and costs in the absence of Inskeep's consent and/or approval. Such a declaration would serve to protect all parties herein and would afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

39. Inskeep is entitled to a declaration from this Court that any and all agreements with Foley to pay fees and costs and any and all payments made to Foley have been and are improper.

WHEREFORE, Plaintiff, MATHEW INSKEEP, individually and acting for, by, or on behalf of BACCUS GLOBAL, LLC, demands judgment from this Court declaring that any and all payments of fees and costs to Foley have been and are improper. Further, Mr. Inskeep requests this Court to award him any and all costs and such other relief as this Court deems just and proper.

## COUNT II
## DECLARATORY RELIEF
*28 U.S.C. § 2201*
**(Against Nelson Mullins Riley & Scarborough, LLP
a/k/a Nelson Mullins Broad & Cassel, LLP)**

40. The allegations of Paragraphs 1 – 33 are re-alleged and incorporated herein.

41. This is an action pursuant to 28 U.S.C. § 2201 for declaratory relief.

42. There is an actual, concrete, particularized, and continuing controversy that exists between Inskeep and Nelson Mullins regarding the propriety of any and all payments made to or agreements to make payments with Nelson Mullins, related to which Inskeep has a legally protected and protectable interest as a member of BG and pursuant to the 2009 Operating Agreement and/or the 2010 Operating Agreement (as defined herein).

43. Without a declaration from this Court to the contrary, BG will continue to pay the legal fees for Nelson Mullins and Nelson Mullins will thereby violate Inskeep's rights under the

2009 Operating Agreement and/or the 2010 Operating Agreement (as defined herein) and deplete BG's funds and Inskeep's rightful share therein.

44. Considering the actual and continuing controversy, declaratory relief would serve a useful purpose in clarifying and settling the parties' adverse interests and issues regarding whether Nelson Mullins could previously, can today, and can in the future obtain payments from BG in excess of $20,000.00 or contract for such fees and costs in the absence of Inskeep's consent and/or approval. Such a declaration would serve to protect all parties herein and would afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

45. Inskeep is entitled to a declaration from this Court that any and all agreements with Nelson Mullins to pay fees and costs and any and all payments made to Nelson Mullins have been and are improper.

WHEREFORE, Plaintiff, MATHEW INSKEEP, individually and acting for, by, or on behalf of BACCUS GLOBAL, LLC, demands judgment from this Court declaring that any and all payments of fees and costs to Nelson Mullins have been and are improper. Further, Mr. Inskeep requests this Court to award him any and all costs and such other relief as this Court deems just and proper.

DATED this 31st day of July, 2021.

By: /s/ *Ashley Crispin Ackal*
BRIAN M. O'CONNELL, ESQ.
Florida Bar No: 308471
ASHLEY CRISPIN ACKAL, ESQ.
Florida Bar No: 37495
CARL T. WILLIAMS, ESQ.
Florida Bar No.: 529990
O'CONNELL & CRISPIN ACKAL, PLLC
420 Royal Palm Way, Suite 300
Palm Beach, Florida 33480
Telephone (Main): 561-355-0403
Facsimile: 561-355-5133

Primary e-mail address:
service@OCAlawyers.com
*Attorneys for Mathew Inskeep*